**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **PRINCE S. DANIELS,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06cv00034 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Prince S. Daniels, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2007). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).



Case 2:06-cv-00034-JPJ-PMS Document 16 Filed 07/23/07 Page 1 of 15 Pageid#: 72

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). '"If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence.'"" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Daniels filed a prior SSI application, which was denied initially, on reconsideration and, thereafter, by decision dated October 22, 2001. (Record, ("R."), at 71-75.) Daniels then filed an action in this court, and by order entered March 2, 2004, the decision of the Commissioner denying benefits was affirmed. *See Daniels v. Barnhart*, Civil Action No. 2:03cv00040 (W.D. Va. Mar. 2, 2004). Daniels protectively filed her current application for SSI on or about May 5, 2003, alleging disability as of May 1, 1999, based on "nerves," back problems, arthritis, neck pain, right shoulder pain, degenerative bone disease, anxiety, carpal tunnel syndrome, acid reflux, arm and leg pain, difficulty walking and allergies. (R. at 103-06, 119, 133.) The claim was denied initially and upon reconsideration. (R. at 78-80, 84, 86-88.) Daniels then requested a hearing before an administrative law judge, ("ALJ"). (R. at 89.) The ALJ held a hearing on June 21, 2004, at which Daniels was represented by counsel. (R. at 33-70.)

By decision dated July 30, 2004, the ALJ denied Daniels's claim. (R. at 13-21.) The ALJ found that Daniels had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 20.) The ALJ also found that the medical evidence

established that Daniels suffered from severe impairments, namely degenerative disc disease and "possible" carpal tunnel syndrome, but he found that Daniels's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.) The ALJ also found that Daniels's subjective allegations regarding her limitations were not credible. (R. at 20.) The ALJ found that Daniels had the residual functional capacity to perform light work[2] diminished by an inability to perform strenuous and repetitive motions with her hands and arms. (R. at 20.) Thus, the ALJ found that Daniels could perform her past relevant work as a fry cook and a pizza maker. (R. at 20.) Therefore, the ALJ found that Daniels was not under a disability as defined in the Act, and that she was not eligible for benefits. (R. at 20-21.) *See* 20 C.F.R. § 416.920(f) (2007).

After the ALJ issued his decision, Daniels pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 5-9.) Daniels then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2007). The case is before this court on Daniels's motion for summary judgment filed September 14, 2006, and the Commissioner's motion for summary judgment filed October 13, 2006.

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2007).

## *II. Facts*[3]

Daniels was born in 1951, (R. at 103), which, at the time of the hearing, classified her as a "person closely approaching advanced age" under 20 C.F.R. § 416.963(d) (2007). Daniels has a seventh-grade education[4] and past relevant work experience as a cook at a fast food restaurant and as a pizza maker. (R. at 39-43, 48-52, 110, 115, 120, 125.)

Daniels testified that she last worked in 2000 at Papa Murphy's pizza parlor in Idaho. (R. at 39.) She stated that she made dough and ran it through a machine to flatten it. (R. at 41.) She further stated that she cut up onions, tomatoes and other similar items. (R. at 41.) Daniels also testified that she had to push crates of dough, weighing approximately 15 pounds each, into the cooler. (R. at 41.) She stated that she had to push approximately 20 of these 15-pound crates at a time, totaling approximately 300 pounds. (R. at 42.) Daniels stated that she spent half of her day making the dough and the other half moving the cases of dough into the cooler. (R. at 42.) She stated that she "switched around" between these duties. (R. at 42.) Daniels initially testified that she quit the job at the pizza parlor because she "wanted to come back home to the country." (R. at 42.) She later testified that she was injured on the job when some crates of dough fell onto her. (R. at 45.) Daniels stated that she

---

[3]Because Daniels does not contest the ALJ's findings with regard to her impairments or her residual functional capacity, I find that it is not necessary to discuss her medical records in this Report and Recommendation. Daniels challenges, instead, the ALJ's finding regarding her ability to return to her past relevant work. That being said, the focus of this Report and Recommendation will be thereon.

[4]Although Daniels noted on her Disability Reports that she had completed the eighth grade, the evidence presented at her hearing showed that she dropped out of school during her eighth-grade year. (R. at 36, 115, 125.)

was off work for two days, and when she tried to return, her employer would not allow her to work. (R. at 45-46.) Daniels testified that she also had worked at a Hardee's restaurant as a cook. (R. at 49.) Specifically, she stated that she had to coat 10- to 15-pound chickens and drop them into a fryer with tongs. (R. at 49-50.) She stated that she also fried burgers. (R. at 50.) She stated that she did not fry chickens all day, but "switched around." (R. at 49.)

In a Disability Report dated May 7, 2003, Daniels noted her past relevant work experience as a cook at a Hardee's restaurant and at a pizza parlor. (R. at 110.) She stated that she worked the longest at Hardee's and that she used machines, tools and equipment as part of this job. (R. at 110.) She further noted that the job did not require her to write or complete reports. (R. at 110.) Daniels stated that this job required her to walk for a total of five hours per day, stand for four and one-half hours per day, sit for 30 minutes per day, stoop for one hour per day, kneel for one hour per day, crouch for one hour per day, handle, grab and grasp big objects for two hours per day and reach for two hours per day. (R. at 110.) She stated that the job did not require her to climb or to crawl. (R. at 110.) Daniels reported that she lifted "[b]read pans with food and [a] biscuit maker." (R. at 110.) She further reported that the heaviest weight she had to lift at this job was 20 pounds, and that she frequently lifted items weighing less than 10 pounds. (R. at 110.)

In an undated Disability Report, Daniels again reported the same past relevant work. (R. at 120.) She described the job at Hardee's as not requiring the use of machines, tools or equipment, technical skills or writing or completing reports. (R. at 120.) She stated that the job required her to walk for a total of three and one-half

hours per day, stand for four and one-half hours per day, sit for 30 minutes per day, stoop for one hour per day, kneel for two hours per day, crouch for one hour per day, handle, grab or grasp big objects for two and one-half hours per day and write, type or handle small objects for one and one-half hours per day. (R. at 120.) She further stated that she had to "lift[] pizza pan and the dough pans about 16 yds."[5] (R. at 120.) Daniels reported that the heaviest weight lifted was 10 pounds, and that she frequently lifted items weighing up to 10 pounds. (R. at 120.)

Dr. Theron Blickenstaff, M.D., a medical expert, also was present and testified at Daniels's hearing. (R. at 62-65.) Dr. Blickenstaff opined that Daniels could lift items weighing up to 20 pounds occasionally and up to 10 pounds frequently. (R. at 63.) He further found that she could not perform strenuous and repetitive motions with her hands and arms. (R. at 63.) Dr. Blickenstaff testified that lifting items weighing up to 20 pounds occasionally and up to 10 pounds frequently did not constitute strenuous and repeated motions of the hands and arms. (R. at 65.)

Norman Hankins, a vocational expert, also was present and testified at Daniels's hearing. (R. at 67-69.) Hankins classified Daniels's jobs as a pizza maker and a fry cook as unskilled and light. (R. at 67.) Hankins was asked to assume a hypothetical individual who was 47 years old, but who had Daniels's education and work history, and who was limited as testified to by Dr. Blickenstaff. (R. at 68.) Hankins opined that such an individual could perform the job of the fry cook. (R. at 68.) Hankins

[5]Although the questions on the Disability Report seek information regarding Daniels's longest job, that of the cook at Hardee's, it appears that she is describing her job at the pizza parlor. Thus, it is unclear whether her answers to the remaining questions are in relation to her job at Hardee's or at the pizza parlor.

noted that such an individual "would probably have trouble with the dough that she described there running through a mixer." (R. at 68.) Hankins was next asked to consider the same individual, but who was 52 years old. (R. at 68.) He testified that the individual would be able to perform past relevant work as a light fry cook. (R. at 68.) Finally, Hankins was asked whether the same individual who had the limitations as testified to by Daniels could perform any jobs. (R. at 68.) He opined that such an individual would not be able to perform any jobs. (R. at 69.)

In rendering his decision, the ALJ reviewed medical records from Dr. Robert E. Botts, M.D.; Dr. Michael Moore, M.D.; Dr. Kenneth Kiser, M.D.; Dr. Mark M. Taylor, M.D.; Lonesome Pine Hospital; St. Luke's Meridian Medical Center; Dr. Syed Zafar Ahsan, M.D.; Dr. Danny A. Mullins, M.D.; Cassandra Dingus, FNP; Hugh Tenison, Ph.D., a state agency psychologist; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Gary Parrish, M.D., a state agency physician; Dr. F.M. Johnson, M.D., a state agency physician; Dr. Gregory Corradino, M.D.; Dr. William Platt, M.D.; Norton Community Hospital; and Bristol Regional Medical Center. Daniels's attorney submitted additional medical records from Wellmont Bristol Regional Medical Center; Dr. Farooq M. Reza, M.D.; Wellmont Health System; and Dr. John W. Whiteley, M.D., to the Appeals Council.[6]

---

[6]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-9), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

## *II. Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2007). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2007).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §1382c(a)(3)(A)-(B) (West 2003 & Supp. 2007); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated July 30, 2004, the ALJ denied Daniels's claim. (R. at 13-21.) The ALJ found that Daniels had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 20.) The ALJ also found that the medical evidence

established that Daniels suffered from severe impairments, namely degenerative disc disease and "possible" carpal tunnel syndrome, but he found that Daniels's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 20.) The ALJ also found that Daniels's subjective allegations regarding her limitations were not credible. (R. at 20.) The ALJ found that Daniels had the residual functional capacity to perform light work diminished by an inability to perform strenuous and repetitive motions with her hands and arms. (R. at 20.) Thus, the ALJ found that Daniels could perform her past relevant work as a fry cook and a pizza maker. (R. at 20.) Therefore, the ALJ found that Daniels was not under a disability as defined in the Act, and that she was not eligible for benefits. (R. at 20-21.) *See* 20 C.F.R. § 416.920(f) (2007).

As stated above, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Daniels argues that the ALJ erred by finding that she could return to her past relevant work either as actually performed or as performed generally in the national economy. (Memorandum In Support Of Plaintiff's Motion For Summary Judgment,

("Plaintiff's Brief"), at 4-19.)

As noted above, 20 C.F.R. § 416.920 sets out the five-step sequential evaluation process used to determine disability. At the fourth step of this process, the ALJ must determine whether, given the claimant's residual functional capacity, she can perform any of her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv) (2007). Specifically, the claimant's residual functional capacity will be compared with the physical and mental demands of the claimant's past relevant work to determine whether the claimant still can perform that kind of work. *See* 20 C.F.R. § 416.920(f) (2007).

Here, the ALJ adopted Dr. Blickenstaff's opinion that Daniels could perform a limited range of light work in making his residual functional capacity finding. (R. at 17-19.) The ALJ stated in his decision that the "claimant has past relevant work as a fry cook and as a pizza maker, both of which were unskilled vocationally and required light exertion." (R. at 20.) The ALJ utilized a vocational expert in reaching his ultimate conclusion that Daniels could return to her past relevant work.[7]

---

[7]I note that in *Smith v. Bowen*, 837 F.2d 635, 637 (4th Cir. 1987), the Fourth Circuit held that it was improper to rely upon the testimony of a vocational expert at step four of the sequential evaluation process to elaborate on a claimant's former job. Instead, the Fourth Circuit held that the vocational expert's opinion became pertinent only after a finding had been made that the claimant could not perform her past relevant work. *See Smith*, 837 F.2d at 637. In response to *Smith*, the Social Security Administration, ("SSA"), on July 16, 1990, published Acquiescence Ruling 90-3(4), to reflect the holding in *Smith* in all cases arising in the Fourth Circuit. However, in August 2003, the SSA rescinded AR 90-3(4), effective September 25, 2003, stating that it had amended 20 C.F.R. §§ 404.1560(b), 416.960(b) to clarify that the SSA may use the services of a vocational expert, vocational specialist or other vocational resources at step four of the sequential evaluation process. That being the case, the social security regulations have superseded *Smith*.

Specifically, as outlined above, the vocational expert, Hankins, classified Daniels's jobs as a pizza maker and a fry cook as unskilled and light. (R. at 67.) He testified that an individual who was 47 years old, who had Daniels's education and work history, and who was limited as testified to by Dr. Blickenstaff, could perform the job of the fry cook. (R. at 68.) However, Hankins noted that such an individual "would probably have trouble with the dough that she described there running through a mixer." (R. at 68.) Hankins was next asked to consider the same individual, but who was 52 years old. (R. at 68.) He testified that such an individual would be able to perform the job of a fry cook at the light level of exertion. (R. at 68.) Finally, Hankins was asked whether the same individual who had the limitations as testified to by Daniels could perform any jobs. (R. at 68.) He opined that such an individual would not be able to perform any jobs. (R. at 69.) In his decision, the ALJ stated as follows:

> [a] highly qualified vocational expert ... testified that based upon the claimant's age, education and residual functional capacity, the claimant could return to her past relevant work as a fry cook and as a pizza maker as she previously performed them and as they are generally performed in the national economy.[8]

---

[8] I note that the ALJ's statement in his decision that the vocational expert found that Daniels could return to her past relevant work as a pizza maker is in error. While the vocational expert opined that Daniels could return to her past work as a fry cook at the light level of exertion, he specifically stated that she "would probably have trouble with the dough that she described there running through a mixer." (R. at 68.) Thus, it appears that the vocational expert did not find that Daniels could return to her past work as a pizza maker. I also note that it is unclear whether the vocational expert found that Daniels could perform her past relevant work both as she performed it and as it generally is performed in the national economy.

(R. at 20.) I find, for reasons not cited by Daniels in her brief, that this case should be remanded to the ALJ for further development. Specifically, it is clear from the transcript of the hearing before the ALJ, that the vocational expert considered the vocational factors of age, education and work experience in reaching his opinion that Daniels could return to her past relevant work. However, pursuant to 20 C.F.R. § 416.960, at the fourth step of the sequential evaluation process, only an individual's residual functional capacity and vocational background will be considered in determining whether an individual can perform her past relevant work. The regulations explicitly state that "[w]e will not consider your vocational factors of age, education, and work experience. ..." 20 C.F.R. § 416.960(b)(3) (2007). Only if it is found that an individual cannot perform her past relevant work may the ALJ consider these vocational factors in determining, at the fifth step of the sequential evaluation process, whether an individual can perform other work existing in significant numbers in the national economy. *See* 20 C.F.R. § 416.960(c) (2007). Likewise, 20 C.F.R. § 416.920(f) & (g) make clear that it is only at step five of the sequential evaluation process that the vocational factors of age, education and work experience will be considered in determining whether an individual can perform other jobs existing in significant numbers in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating if a claimant reaches step five in the sequential evaluation process, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy the claimant can perform considering his age, education and work experience) (citation omitted).

It is well-settled that testimony of a vocational expert constitutes substantial evidence for purposes of judicial review where his or her opinion is based upon a



Case 2:06-cv-00034-JPJ-PMS Document 16 Filed 07/23/07 Page 12 of 15 Pageid#: 83

consideration of all the evidence of record and is in response to a proper hypothetical question which fairly sets out all of a claimant's impairments. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Because the vocational expert's opinion that Daniels could return to her past relevant work as a fry cook was based upon faulty hypotheticals including Daniels's age and education, they cannot constitute substantial evidence upon which the ALJ may rely in reaching his conclusion that Daniels could return to her past relevant work. For this reason, I find that the ALJ's finding that Daniels could return to her past relevant work is not supported by substantial evidence.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist to support the ALJ's finding that Daniels could return to her past relevant work; and

2. Substantial evidence does not exist to support the ALJ's finding that Daniels was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Daniels's motion for summary judgment, deny the Commissioner's motion for summary judgment, vacate

the Commissioner's decision denying benefits and remand the case to the ALJ for further evaluation of the requirements of Daniels's past relevant work and whether Daniels can return to that work either as performed or as performed generally in the national economy.

I further recommend denying Daniels's request to present oral argument based on my finding that it is not necessary at this time given the above recommended disposition.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.



Case 2:06-cv-00034-JPJ-PMS Document 16 Filed 07/23/07 Page 14 of 15 Pageid#: 85

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 23rd day of July 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE



Case 2:06-cv-00034-JPJ-PMS Document 16 Filed 07/23/07 Page 15 of 15 Pageid#: 86